FILED
CLERK, U.S. DISTRICT COURT

JUN 1 8 2003

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ____
Send      ✓
Enter     ____
Closed    ____
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE A., *et al.*, | CASE NO. CV02-5662 AHM (SHx) |
| Plaintiffs, | **ORDER RE CLASS CERTIFICATION** |
| v. | |
| DIANA BONTA, *et al.*, | |
| Defendants. | |

ENTER ON ICMS

JUN 19 2003

# I.
# INTRODUCTION

This lawsuit challenges the alleged failure of the State of California and the County of Los Angeles to provide appropriate mental health services to foster children in California with "behavioral, emotional or psychiatric impairments . . . who need individualized mental health services . . . ." First Amended Complaint ("FAC"). ¶ 37. The Plaintiffs are five troubled children who are in the custody of the Los Angeles County Department of Children and Family Services ("DCFS"). The Defendants are Los Angeles County; DCFS; Acting Director of DCFS Marjorie Kelly; Director of California Department of Health Services ("DHS") Diana Bontá; and Director of the California Department of Social Services

("DSS") Rita Saenz.  Plaintiffs have reached a tentative settlement agreement with the Los Angeles County Defendants on behalf of a subclass of children who are in the custody of DCFS, or have been referred to or are subject to referral to DCFS.  Whether the Los Angeles subclass may be certified and whether that settlement should be approved are not at issue here.  What *is* at issue is whether, in their suit against Defendants Bontá and Saenz (hereinafter "State Defendants"), Plaintiffs may, under Fed. R. Civ. P. 23(b)(2), represent a class composed of:

> children in foster care in California, or at imminent risk of foster care placement, who have a behavioral, emotional or psychiatric impairment and who need individualized mental health services, including but not limited to professionally acceptable assessments, behavioral support and case management services, family support, crisis support, therapeutic foster care and other necessary services in the home or in a home-like setting, to treat or ameliorate their disabilities or impairments.

FAC ¶ 37.[1]  For the following reasons, the Court certifies a differently-defined class but holds that one of the named Plaintiffs, Gary E., may not represent the class, because his interests are not typical of the class as a whole.

## II.

## FACTS[2]

Unless otherwise noted, the First Amended Complaint alleges the following.[3]  More than 90,000 children are in foster care in California.  FAC ¶ 3. According to a 2001 report of the Little Hoover Commission, more than 50,000 of those children may need, but do not receive, adequate mental health services. *Id.* ¶ 45. Plaintiffs allege that for foster children with "behavioral, emotional or

---

[1]  Plaintiffs later proposed a modified definition of the requested class.  See Section III(1), below.

[2]  This statement of facts does not include many of Plaintiffs' specific allegations against the Los Angeles County Defendants.

[3]  In reviewing a motion for class certification, the Court generally is bound to take the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F. 2d 891, 901 n. 17 (9th Cir. 1975).

psychiatric impairments," *id.* ¶ 37, adequate mental health services include, among other things, wraparound services, therapeutic foster care services and/or case management services.

> Wraparound services are
>
> specific individualized community-based services and supports designed for children who have serious mental or emotional disorders and provided in the child's own home or an alternative family setting. . . . Although the key to wraparound is provision of services and supports tailored to the individual needs of each child, typical wraparound services include crisis intervention, mobile therapy, therapeutic staff support, behavioral specialist consultation, cognitive retraining, family based rehabilitation services, specialized evaluations, family therapy, parent education and training, and other outpatient psychiatric and psychological services.

*id.* ¶ 59.

> Therapeutic foster care consists of
>
> intensive and highly coordinated mental health and support services provided to a foster parent or care giver, in which the foster parent/care giver becomes an integral part of the child's treatment team. . . . For children in the foster care system or who are at risk of out-of-home placement and whose needs are too great for a conventional foster home . . . therapeutic foster care is an important alternative to placement in an institutional or congregate care setting.

*id.* ¶ 61.

> Case management services assist Medicaid beneficiaries in obtaining needed medical, social, educational and other services. FAC ¶ 62. Plaintiffs claim that case management is "essential to coordinate the provision of [wraparound] services and to coordinate health care services with services available from other programs, such as child welfare and education." *Id.* ¶ 59.

Plaintiffs allege, and State Defendants agree, that virtually all foster children in California receive, or are eligible to receive, their health care services through Medi-Cal, California's Medicaid program. *Id.* ¶ 3; Answer ¶ 3. This means, according to Plaintiffs, that virtually all foster children in California who have "behavioral, emotional or psychiatric impairments," FAC ¶ 37, are entitled to case management, wraparound and/or therapeutic foster care services where appropriate.

Plaintiffs allege, however, that foster children with such impairments do

3

1 | not have access to Medicaid case management on a consistent, statewide basis.

2 | *Id.* ¶ 63. They also allege that California does not provide wraparound or

3 | therapeutic foster care as a Medi-Cal service, nor does California provide

4 | components of these services to Medi-Cal-eligible children on a consistent

5 | statewide basis. *Id.* ¶¶ 60-61. These failures, Plaintiffs allege, violate the Early

6 | and Periodic Screening, Diagnostic and Treatment ("EPSDT") requirements of

7 | the Medicaid Act (42 U.S.C. § 1396 *et seq.*); Substantive Due Process under the

8 | United States and California Constitutions (U.S. Const. amend. XIV; CA Const.

9 | art. I § 7(a)); the Americans with Disabilities Act (42 U.S.C. § 12132, 28 C.F.R. §

10 | 35.130); the Rehabilitation Act (29 U.S.C. § 701 *et seq.*); and California

11 | Government Code § 11135 and its associated regulations. *Id.* ¶¶ 76-92.

12 |      Plaintiffs seek a judgment declaring that Defendants' alleged failure to

13 | comply with the foregoing constitutional, statutory and regulatory provisions is

14 | unconstitutional. They also seek a permanent injunction against further

15 | violations. FAC, pages 26-27. They do not seek monetary damages, either

16 | compensatory or punitive.

17 | **1.     The Plaintiffs**

18 |      All five fictitiously-named Plaintiffs are children who are or were residing

19 | in Los Angeles in the custody of DCFS.[4] Plaintiff Katie A. is a fourteen-year-old

20 | girl who currently resides in Los Angeles County. She was removed from her

21 | home at age four on account of neglect; her mother was homeless and her father

22 | incarcerated. FAC ¶ 10. By age five, Katie's assessments indicated that she was

23 | a trauma victim, that she has difficulty with peer relations and needs intensive

24 | individualized treatment, with supportive services for her caretaker. *Id.* ¶ 11-12.

25 | However, Plaintiffs allege that DCFS has consistently placed Katie in congregate

26 |

---

27 |     [4] Each of the named plaintiffs is prosecuting this action through a court-

28 | approved guardian *ad litem.*

4

1  care facilities with other behaviorally and emotionally disturbed children, where
2  she has received limited attention. *Id.* ¶ 12. In her ten years in DCFS custody,
3  Katie has been in thirty-seven out-of-home placements, including four different
4  group homes, nineteen stays at eight different psychiatric hospitals and seven
5  stays at the MacLaren Children's Center ("MacLaren").[5] *Id.* ¶ 14.

6      Plaintiff Mary B. is a sixteen-year-old legally blind girl who resides in Los
7  Angeles County and who has been in foster care for three years.  She was
8  removed from her home at age thirteen after being physically and emotionally
9  abused and left unsupervised by her mother.  She was subsequently diagnosed
10 with a sexually transmitted disease and revealed that she had been sexually
11 abused by her maternal uncle and stepfather. *Id.* ¶ 15.  During her three years in
12 DCFS custody, Mary has had twenty-eight placements, including "repeated"
13 psychiatric hospitalizations. *Id.* ¶ 16, 18.  Plaintiffs allege that she has never
14 received a comprehensive psychiatric assessment since her entry into DCFS
15 custody. *Id.* ¶ 16.  Although a Department of Mental Health screening committee
16 suggested that a specialized foster home with wraparound services could meet
17 Mary's needs, DCFS placed her in a large residential facility. *Id.* ¶ 18.  She
18 currently resides in a high-level, restrictive group home. *Id.*

19     Plaintiff Janet C. is eleven years old and has been in foster care in Los
20 Angeles County for more than two years. *Id.* ¶ 19.  She was removed from her
21 parents' custody following reports of physical abuse in the home. *Id.*  During her
22 time in foster care, she has had twenty-five placements, including five with family
23 members, twelve hospital stays at seven different hospitals and three stays at
24 MacLaren. *Id.* ¶ 23.  Plaintiffs allege that DCFS has failed to provide Janet with
25 the consistent, intensive mental health services and other support that she needs.
26 *Id.* ¶ 21.  As a result, she "continues to deteriorate." *Id.*

27
28      [5] MacLaren was closed down sometime after this lawsuit was filed.

1       Plaintiff Henry D. is a nine year-old legally blind boy who currently resides

2   in a group home in Los Angeles County. *Id.* ¶¶ 24, 27.  He was first removed

3   from his home at the age of four following reports of physical and sexual abuse

4   by his mother's boyfriend.  Plaintiffs allege that despite documentation of

5   Henry's serious behavioral and emotional problems, DCFS did not provide him

6   with a mental health evaluation or appropriate mental health services. *Id.* ¶ 24.

7   Henry was later returned to his mother's custody, but she subsequently returned

8   him to foster care on account of further abuse by her boyfriend. *Id.* ¶ 25.  He has

9   been diagnosed with Major Depression and Post Traumatic Stress Disorder and

10  was not provided with intensive individual therapy until about six months after

11  that diagnosis. *Id.*  Plaintiffs allege that DCFS's current case plan for Henry is

12  deficient in that it fails to identify his individual needs and any specific services

13  to be provided to him. *Id.*  In the fourteen months following his second removal

14  from his home, Henry had twelve placements, including six hospital stays at three

15  different hospitals and one stay at MacLaren. *Id.* ¶ 27.

16      Plaintiff Gary E. is a fourteen year old boy who returned home after six

17  months in foster placements. *Id.* ¶ 28.  During his six months in foster care, a

18  therapist documented Gary's significant emotional and behavioral problems

19  which have impeded his educational progress. *Id.* ¶ 29.  However, Plaintiffs

20  allege that Gary did not receive appropriate mental health and behavioral support

21  services. *Id.*  He was returned to his mother's home, without any supportive

22  services, because DCFS determined that there was no facility capable of meeting

23  Gary's educational, physical and emotional needs. *Id.* ¶ 30.  Plaintiffs allege that

24  without appropriate supportive services, Gary faces the imminent risk of another

25  entry into the foster care system. *Id.* ¶ 31.

26      Though Gary E. formerly resided in Los Angeles County, he is now

27  residing with his father in Boise, Idaho.  In December 2002, the juvenile

28  dependency court authorized a visit by Gary with his father.  Although Gary was

1   to return to California in early January, he did not return because delinquency
2   charges were filed against him requiring him to stay in Idaho.  3/13/03 Joint
3   Statement of Plaintiffs' Counsel and County Defendants on Progress of Named
4   Plaintiffs at 2.  As a result of those charges, Gary is currently on probation, one
5   condition of which is that he not leave Idaho without a court order.  Gary's father
6   has applied for legal custody of Gary and DCFS services for Gary have been
7   suspended pending determination of whether he will return to Los Angeles.  *Id.*

8   **2.     The State Defendants**

9        Defendant DHS is the single state agency responsible for administering or
10  supervising the administration of Medi-Cal.  Answer ¶ 32 (citing 42 U.S.C. §
11  1396a(a)(5)).  Defendant CDSS is the single state agency responsible for
12  supervising the administration of child welfare services in California.  Answer ¶
13  36. *See also* Calif. Welf. & Inst. Code §10600.  To that end, CDSS is empowered
14  to promulgate regulations and standards, *id.* § 10554, and investigate, examine
15  and make reports on public officers responsible for the administration of public
16  social services funds administered by CDSS.  *Id.* § 10602.  Additionally,
17  Defendant Saenz, CDSS's Director, is responsible for administering laws relating
18  to child welfare services (except health care services and medical assistance), *id.*
19  § 10553(b), and has the authority to take action against counties that fail to
20  comply with state statutes and regulations addressing child welfare services. *Id.* §
21  10605.

22                                    **III.**

23                    **Class Certification Requirements**

24        Federal Rule of Civil Procedure 23 establishes the standards for certifying
25  a class action.  Under Rule 23(a), class certification is appropriate where: (1) the
26  proposed class is so numerous that joinder is impracticable, (2) there are
27  questions of law or fact common to the class, (3) the claims or defenses of the
28  representative parties are typical of the claims or defenses of the class, and (4) the

1 representative parties will fairly and adequately protect the interests of the class.

2 Fed. R. Civ. P. 23(a). Plaintiffs also must satisfy one of the Rule 23(b)

3 requirements. In this case, they seek to proceed under Rule 23(b)(2).

4 Certification under Rule 23(b)(2) is appropriate where the opposing party "has

5 acted or refused to act on grounds generally applicable to the class, thereby

6 making appropriate final injunctive relief or corresponding declaratory relief with

7 respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

8      The party seeking class certification bears the burden of establishing that

9 he or she meets the requirements of Rule 23. *Zinser v. Accufix Research Institute,*

10 *Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The Court must conduct a "rigorous

11 analysis" to determine that the prerequisites are met, *General Tel. Co. of the*

12 *Southwest v. Falcon*, 457 U.S. 147, 161 (1982), but a plaintiff seeking class

13 certification need not make a prima facie showing that he will prevail on the

14 merits of his substantive claims. *Murray v. Local 2620*, 192 F.R.D. 629, 631

15 (N.D. Cal. 2000). Rather, in reviewing a motion for class certification, the Court

16 generally is bound to take the substantive allegations of the complaint as true.

17 *Blackie v. Barrack*, 524 F. 2d 891, 901 n. 17 (9th Cir. 1975). The Court will look

18 beyond the pleadings only when necessary to decide whether the Rule 23

19 requirements have been satisfied. *Bates v. United Parcel Service*, 204 F.R.D.

20 440, 443-44 (N.D. Cal. 2001). If the moving party has met his burden under Rule

21 23, the Court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

22      In certifying a class, the court should keep in mind the dual purposes of

23 Rule 23: (1) to promote judicial economy through the efficient resolution of

24 multiple claims in a single action; and (2) to provide persons with smaller claims,

25 who would otherwise be economically precluded from doing so, the opportunity

26 to assert their rights. 7A Wright, Miller & Kane, Federal Practice & Procedure 2d

27 ("Wright") § 1754; Schwarzer, Tashima & Wagstaffe, Cal.Prac. Guide:

28 Fed.Civ.Pro. Before Trial § 10:250 (The Rutter Group 2003).

1    Before assessing each of the explicit requirements of Rule 23, the Court

2  must evaluate the State Defendants' threshold contention that the class Plaintiffs

3  seek to represent is not adequately defined.

4    **1.    The Proposed Class Can Be Defined Adequately**

5    "An essential prerequisite of an action under Rule 23 is that there must be a

6  'class.'" Wright § 1760. However, the contours of the class need not be so clear

7  that every potential member may be identified at the time of class certification.

8  *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)

9  (citing Wright § 1760). Rather, "a class will be found to exist if the description of

10  the class is definite enough so that it is administratively feasible for the court to

11  ascertain whether an individual is a member." *Id.* (citing *Aiken v. Obledo*, 442

12  F.Supp. 628, 658 (E.D.Cal.1977)).  Plaintiffs seek to certify a Rule 23(b)(2) class;

13  a definition that identifies all potential class members with precision is not

14  necessary because they seek not money damages on behalf of individual class

15  members but institutional reform on the part of DHS and DCFS. *See*

16  Fed.R.Civ.P. 23 Advisory Comm. Notes 1966 Amendment (23(b)(2) actions

17  include those "in the civil rights field where a party is charged with

18  discriminating unlawfully against a class, usually one whose members are

19  incapable of specific enumeration."). As such, the focus is primarily on what

20  Defendants are doing (and what Plaintiffs allege they ought to be doing) rather

21  than exactly who they are doing (or failing to do) it to.

22    The Court has discretion to limit or otherwise redefine the class if the Court

23  finds that the Plaintiffs' class definition does not meet a "minimum standard of

24  definiteness." 7A Wright § 1760. At the hearing on this motion, the Court

25  expressed its view that two aspects of the class definition plaintiffs originally

26  proposed – see page 2, *supra* – were unduly vague or overbroad.  First, the phrase

27  "at imminent risk of foster care placement" without more, did not and could not

28  meaningfully identify those children not in foster care who may be entitled to, but

1   are not then receiving, the enumerated mental health services. Second, the terms

2   "behavioral [and] emotional . . . impairment" are overbroad. As State Defendants

3   pointed out, those terms are so elastic and imprecise that they could be construed

4   to encompass virtually all children in California, at least at some points in almost

5   every child's development. At the Court's request, both sides then submitted

6   proposed written revisions to the original class definition. Based on those

7   supplemental proposals and on the arguments of the parties at the hearing, the

8   Court now holds that the following class definition is adequate for purposes of a

9   Rule 23(b)(2) class action.

10        "The class consists of children in California who,

11        (a)    are in foster care or are at imminent risk of foster care
                 placement; and
12
          (b)    have a mental illness or condition that has been documented or, had
13               an assessment already been conducted, would have been
                 documented; and
14
          (c)    who need individualized mental health services, including but not
15               limited to professionally acceptable assessments, behavioral support
                 and case management services, family support, crisis support,
16               therapeutic foster care and other necessary services in the home or in
                 a home-like setting, to treat or ameliorate their illness or condition.
17

18        For the purposes of this case, 'imminent risk of foster care placement'

19   means that within the last 180 days a child has been participating in voluntary

20   family maintenance services or voluntary family reunification placements[6] and/or

21   has been the subject of either a telephone call to the Child Protective Services

22   hotline or some other documented communication made to a local Child

23   

24        [6] Plaintiffs represented that these services are provided to children formerly in
     foster care who are returned for a trial period to live with their families to determine
25   whether those children can function at home. These children are "at risk," because
     they will be returned to foster care if things go badly. *Accord Coleman v. Wilson*, 912
26   F.Supp. 1282, 1293 (E.D. Cal. 1995) (certifying a Rule 23(b)(1) and 23(b)(2) class
     consisting of "all inmates with serious mental disorders who are now *or who will in*
27   *the future* be confined within the California Department of Corrections" except for
     three correctional facilities) (emphasis added).
28

1    Protective Services agency regarding suspicions of abuse, neglect or

2    abandonment.

3         In the foregoing definition of the certifiable class, the phrase "mental

4    illness or condition," tracks the language of 42 U.S.C. § 1396d(r)(1)(A)(ii) and 42

5    U.S.C. § 1396d(r)(5), which govern the provision of EPSDT services. The

6    language added at the end of the definition also provides a meaningful standard

7    for the phase "imminent risk of foster care placement."

8         State Defendants nevertheless argue that the services enumerated in

9    requirement (c) are unduly vague and ambiguous. Whatever uncertainty may be

10   inherent in those terms will not defeat Rule 23(b)(2) class certification. In this

11   case, Plaintiffs are arguing that the law entitles children in foster care (or at

12   imminent risk of foster care placement) to certain mental health assessments and,

13   if necessary, mental health services, which the State currently is not providing.

14   To prevail, Plaintiffs will have to show why failure to make those services

15   available violates the law. Plaintiffs are entitled  to define a Rule 23(b)(2) class

16   by this kind of reference to the injury they allege. In *Daniels v. City of New York*,

17   198 F.R.D. 409 (S.D.N.Y. 2001), the plaintiffs asked the court to certify a class

18   consisting of all persons who had been or would be subjected by officers of the

19   Street Crimes Unit of the New York City Police Department to "illegal stopping

20   and/or frisking . . . in the absence of the reasonable articulable suspicion . . . [in

21   violation of the Fourth Amendment] . . . in a manner that discriminates on the

22   basis of race and/or national origin in violation of the Equal Protection Clause of

23   the Fourteenth Amendment." *Id.* at 412. The defendants argued that the class

24   was not sufficiently well-defined, because determination of class membership for

25   each putative plaintiff would require an individualized assessment of the very

26   thing the plaintiffs were trying to prove on behalf of the class as a whole – that

27   the police had violated that individual's Fourth and Fourteenth Amendment

28   rights. Rejecting that contention, the Court held that the class met the specificity

     requirement, noting that "general class descriptions based on the harm allegedly

1  suffered by plaintiffs [are] acceptable in class actions seeking only declaratory

2  and injunctive relief under Rule 23(b)(2)." *Id.* at 416 (citation omitted). *See also*

3  *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir. 1993) (class

4  definition in Rule 23(b)(2) class action met specificity requirement despite that

5  class was defined by reference to the wrongdoing Plaintiffs alleged). If and to the

6  extent that after discovery has been conducted it proves advisable to break down

7  this class into sub-classes, the Court has the authority to do so. *Marisol A. v.*

8  *Giuliani*, 126 F.3d 1372, 1378 (2d. Cir. 1997).

9      **2.**    **Rule 23 Requirements**

10          **a.**    **Numerosity**

11       To satisfy the Rule 23(a) requirements for certification, the proposed class

12 must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P.

13 23(a)(1). Although decisions vary as to the number of members sufficient to

14 make joinder impracticable, in general, courts have held that joinder is practicable

15 where there are fewer than 25 parties, and impracticable where there are more

16 than 35. 7A Wright § 1762; *Patrick v. Marshall*, 460 F.Supp. 23, 26 (N.D. Cal.

17 1978). It is not necessary that the exact size of the class be known if "general

18 knowledge and common sense indicate that it is large." *Perez-Funez v. District*

19 *Director, I.N.S.*, 611 F.Supp. 990, 995 (C.D. Cal. 1984) (quoting *Orantes-*

20 *Hernandez v. Smith*, 541 F.Supp. 351, 370 (C.D. Cal.1982)). Additional factors

21 in assessing whether joinder is impractical are geographic diversity of class

22 members, whether individual claimants can institute separate suits, and whether

23 the class representatives seek injunctive or declaratory relief. *Jordan v. County of*

24 *Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S.

25 810 (1982).

26       The numerosity requirement is easily satisfied here. The class consists of

27 children in foster care, or at imminent risk of being placed in foster care, who are

28 Medi-Cal eligible and who need mental health services. Plaintiffs allege – and

    the

1 State Defendants agree – that there are more than 90,000 children in foster care in

2 California and that virtually all of those children are Medi-Cal eligible.  FAC ¶ 3;

3 Answer ¶ 3.  The State Defendants also do not quarrel with Plaintiffs'

4 representation that a 2001 report of the Little Hoover Commission found that

5 there were "[m]ore than 50,000 children in the foster care system who may need

6 mental health services [but] do not get them."  FAC ¶ 45.  Those 50,000 children

7 are located throughout California and allegedly lack essential mental health

8 services.  Joinder is impracticable, because those numerous class members are

9 minors without the financial or psychological means to institute individual

10 actions against the State.

11                          **b.    Commonality**

12         Rule 23(a)(2) requires that common questions of law or fact exist among

13 class members.  The Ninth Circuit has construed this requirement "permissively,"

14 and, in fact, considers the requirements for finding commonality under Rule

15 23(a)(2) to be "minimal."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020

16 (9th Cir. 1998).  Indeed, "[a]ll questions of fact and law need not be common to

17 satisfy the rule.  The existence of shared legal issues with divergent factual

18 predicates is sufficient."  *Id.* at 1019.  Thus, in a civil-rights suit, "commonality is

19 satisfied where the lawsuit challenges a system-wide practice or policy that

20 affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868

21 (9th Cir. 2001).  And suits alleging that a government program does not comply

22 with the mandates of federal statutes or regulations "generally satisfy the

23 commonality requirement," because "the government's uniform policies and

24 alleged legal violations similarly affect all of the members of the putative class."

25 5 *Moore's Federal Practice* § 23.23[5][g] (Matthew Bender 3d ed.).

26         In *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994), the plaintiffs sought to

27 certify a class consisting of abused or neglected children in the custody of

28 Philadelphia's Department of Human Services.  They alleged that systemic

deficiencies prevented that Department from providing various child welfare

13

1 services legally mandated by the United States Constitution and by federal and

2 state law. *Baby Neal*, 43 F.3d at 52.  The Third Circuit held that the class

3 satisfied the commonality requirement.  The court observed that "[Rule 23(b)(2)]

4 classes have been certified in a legion of civil rights cases where commonality

5 findings were based primarily on the fact that defendant's conduct is central to the

6 claims of all class members irrespective of their individual circumstances and the

7 disparate effects of the conduct." *Id.* at 57. The Court held that alleged violations

8 by the Department of statutory and Constitutional standards amounted to a

9 "common course of conduct" toward all children in its custody sufficient to

10 satisfy the commonality requirement, without need for individualized

11 determinations of the propriety of injunctive relief. *Id.*  Moreover, the court noted

12 that commonality does not require that all members of the class suffer the same

13 injury.  That they were all subject to the injury or faced the immediate threat of

14 injury sufficed for Rule 23(b)(2). *Id.*

15      In *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997), eleven

16 children brought an action challenging alleged systemic failures of the New York

17 City child welfare system in violation of the federal and New York state

18 Constitutions and various federal and state laws. *Id.* at 375.  Each named plaintiff

19 challenged a different aspect of the child welfare system, including alleged

20 inadequate training and supervision of foster parents, failures to properly

21 investigate reports of suspected neglect and abuse, delays in removing children

22 from abusive homes, and the inability to secure appropriate placements for

23 adoption. *Id.* at 376.  The named plaintiffs sought to certify a class consisting of

24 "[a]ll children who are or will be in the custody of the New York City

25 Administration for Children's Services ('ACS'), and those children who, while

26 not in the custody of ACS, are or will be at risk of neglect or abuse and whose

27 status is or should be known to ACS." *Id.*  The district court identified as a

28 common question of law whether each child had a legal entitlement to the

specified services and it identified as a common question of fact whether

14

1    defendants had systematically failed to provide the services. *Id.* at 377. The

2    Second Circuit held that the district court did not abuse its discretion in finding

3    that the plaintiffs' alleged injuries "derive from a unitary course of conduct by a

4    single system," *id.* , and therefore satisfy the commonality requirement.

5          According to Plaintiffs, EPSDT requires screening services – to identify

6    defects, conditions and illness – as well as treatment services, to correct or

7    ameliorate those conditions. *Id.* (citing 42 U.S.C. § 1396d(r)(1), 42 C.F.R. §

8    441.56(b), 42 U.S.C. § 1396d(r)(5)). Plaintiffs maintain that for foster children

9    with mental health problems, such mandatory treatment services include

10   "professionally adequate assessments and case management and, depending on

11   the needs of the child, may include behavioral support services, individualized

12   wraparound services, therapeutic foster care and psychiatric or clinical services

13   provided in a home-like setting." FAC ¶ 58. Plaintiffs go on to allege that foster

14   children with such impairments do not have access to Medicaid case management

15   on a consistent, statewide basis. *Id.* ¶ 63. They also allege that California does

16   not provide wraparound or therapeutic foster care as a Medi-Cal service, nor does

17   California provide components of these services to Medi-Cal-eligible children on

18   a consistent statewide basis. *Id.* ¶¶ 60-61.

19         Plaintiffs allege that DHS is violating the EPSDT requirements and the

20   other constitutional and statutory provisions described at page 4, *supra,* by not

21   ensuring that these services are provided to foster children with "behavioral,

22   emotional or psychiatric impairments." (In the class this Court has certified they

23   are children with a "mental illness or condition.") CDSS promulgates regulations

24   and standards, *id.* § 10554, is responsible for administering laws relating to child

25   welfare services, *id.* § 10553(b), and has the authority to take action against

26   counties that fail to comply with state statutes and regulations addressing child

27   welfare services. *Id.* § 10605.

28         The class satisfies the commonality requirement, because DHS and CDSS's

     alleged failure to provide adequate mental health services to foster children in

1  California is "a system-wide practice or policy that affects all of the putative class

2  members," *Armstrong*, 275 F.3d at 868.  As in *Baby Neal*, the alleged conduct of

3  the Defendant governmental agencies is a "common course of conduct" affecting

4  all members of the proposed class. *Baby Neal*, 43 F.3d at 57.  Whether these

5  mental health services must be but are not provided to foster children are the

6  common issues of fact and law in Plaintiffs' case against Defendants DHS and

7  CDSS.

8          Defendants rely heavily on the Tenth Circuit's holding in *J.B. v. Valdez*,

9  186 F.3d 1280 (10th Cir. 1999), to support their argument that the commonality

10  requirement is not satisfied.  In *J.B.* the plaintiffs sought declaratory and

11  injunctive relief alleging that systemic failures in the state welfare system had

12  resulted in a lack of available therapeutic services to mentally or developmentally

13  disabled children in New Mexico. *Id.* at 1282, 1289.  The majority held that the

14  district court did not abuse its discretion when it declined to certify a class

15  consisting of all children in or at risk of being in state custody with mental or

16  developmental disabilities that require treatment. The court rejected the plaintiffs'

17  theory of commonality, finding that the children came into state custody in a

18  variety of ways and that they did not share a common statutory or constitutional

19  claim.  It stated, "[w]e refuse to read an allegation of systematic [sic] failures as a

20  moniker for meeting the class action requirements." *Id.* at 1189.  This is

21  inconsistent with Ninth Circuit (*Armstrong*), Second Circuit (*Marisol A.*) and

22  Third Circuit (*Baby Neal*) precedent and would defeat the strong policy

23  arguments favoring availability of class action remedies to those subjected to

24  "system-wide practice[s] or polic[ies]," *Armstrong*, 275 F.3d at 868. *See also*

25  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("It is sufficient if class

26  members complain of a pattern or practice that is generally applicable to the class

27  as a whole.")  What matters is whether the proposed systemic changes will affect

28  an individual class member, not how he or she came to be a class member in the

first place.

16

1        The proposed class satisfies the commonality requirement.

2            **c.**      **Typicality**

3        The typicality requirement "is designed to assure that the named

4 representative's interests are aligned with those of the class." *Jordan*, 669 F.2d at

5 1321. Where such an alignment exists, a representative who vigorously pursues

6 his or her own interests will necessarily advance the interests of the class. *Id.*

7 The Ninth Circuit interprets the Rule 23(a) typicality requirement permissively.

8 *Hanlon,* 150 F.3d at 1020. A named plaintiff must be a member of the class he

9 seeks to represent and must "possess the same interest and suffer the same injury"

10 as class members. *Falcon*, 457 U.S. at 156. The named plaintiffs' claims need

11 not be identical to the claims of the class; rather, the claims are typical if they are

12 "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d

13 at 1020. It is sufficient for the plaintiffs' claims to "arise from the same remedial

14 and legal theories." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D.

15 439, 449 (N.D. Cal. 1994).

16        The State Defendants' principal argument against typicality is that because

17 all representative Plaintiffs are or were in the custody only of Los Angeles

18 County, they are not representative of other class members in the custody of other

19 California counties. Opp. at 18. Defendants' argument fails. They have

20 demonstrated no reason to find that a named plaintiff living in Los Angeles

21 County has a different interest in causing DHS and CDSS to ensure she receives

22 the mental health services she needs and to which she is entitled than does a class

23 member residing in a different county. Similarly, the injury a representative

24 plaintiff suffers because Medi-Cal does not routinely provide, say, wraparound

25 services, arises from the same remedial or legal theory as the injury a class

26 member in a different county suffers from that same Medi-Cal limitation. In

27 short, because the named Plaintiffs are challenging state practices and policies

28 allegedly being followed in *all* California counties, it is irrelevant in what county

1  they reside.

2       The State Defendants are correct, however, that Plaintiff Gary E.'s interests
3  are not typical of the class.  Since the First Amended Complaint was filed, Gary
4  E. traveled to Idaho to visit his father, who resides there.  Since then, Gary's
5  father has applied for legal custody of Gary and Gary may not leave Idaho absent
6  a court order.  For this reason, DCFS services for Gary have been suspended
7  pending determination of whether he will return to Los Angeles.  3/13/03 Joint
8  Statement of Plaintiffs' Counsel and County Defendants on Progress of Named
9  Plaintiffs at 2.  Although Plaintiffs may be correct in their unsupported assertion
10 that (at least for reporting or record keeping purposes) Gary E. remains in the
11 custody of DCFS (presumably until Gary's father receives legal custody), Reply
12 at 8 n. 5, Gary's interest in California-provided benefits is not typical of the
13 interest of other class members in those same benefits.

14      The State Defendants' other argument against typicality is that the named
15 Plaintiffs' interests are now moot, because they have reached a settlement with
16 the Los Angeles County Defendants.  Opp. at 12.  This argument also fails,
17 because, as described above, the Complaint asserts that the law imposes particular
18 obligations on DHS and CDSS.  The State Defendants have provided no support
19 for their argument that if the County Defendants fulfil their obligations to the
20 named plaintiffs the State Defendants would no longer continue to have
21 independent responsibilities to them or to the class as a whole.

22      For these reasons, the Court holds that Plaintiffs Katie A., Mary B., Janet
23 C. and Henry D. satisfy the typicality requirement, but that Gary E. does not.

24              **d.     Adequacy of Representation**

25      Before certifying a class under Rule 23, the Court must find that "the
26 representative parties will fairly and adequately protect the interests of the class."
27 Fed. R. Civ. P. 23(a)(4).  This depends on two questions: (1) whether the named
28 Plaintiffs and their counsel have any conflicts of interest with other class
   members

1  and (2) whether the named plaintiffs and their counsel will prosecute the action
2  vigorously on behalf of the class. *Hanlon*, 150 F. 3d at 1020.

3          Defendants do not argue that the named Plaintiffs or their counsel have
4  conflicts of interest with other class members and there is no reason to suspect
5  there are such conflicts.  The State Defendants do appear to challenge Plaintiffs'
6  counsel's ability to pursue this action vigorously by challenging Plaintiffs'
7  counsel's decision not to join the 57 other California counties in this action.
8  Defendants argue that because the provision of public social services is a county
9  function and responsibility, class members will not obtain the relief they seek
10  without naming all California counties in this suit.  Opp. at 19 (citing Welf. &
11  Inst. Code § 10800).  The State Defendants also maintain that children in
12  different counties will receive and be eligible for different child welfare services.
13  Opp. at 19.  However, California law subjects the administration by all counties
14  of federal or state-funded foster care services to CDSS and DHS regulations.
15  Welf. & Inst. Code §§ 10054, 10800.  Plaintiffs' counsel's decision to sue the
16  state agencies that promulgate and enforce the regulations that are binding on all
17  counties by no means suggests that Plaintiffs' counsel will not vigorously
18  represent the class.  This is especially true, given that in the context of these kinds
19  of claims an injunction against the State Defendants will bind all California
20  counties. *E.g. Blanco v. Anderson*, 39 F.3d 969, 971-72 (9th Cir. 1994).

21          Finally, discovery disputes notwithstanding, the Court finds that the Legal
22  Director of the ACLU of Southern California (Rosenbaum Decl. ¶ 5), the Legal
23  Director of the Judge David L. Bazelon Center for Mental Health Law (Birnum
24  Decl. ¶ 1), the chair of the Los Angeles Pro Bono Committee of the Heller
25  Ehrman White & McAuliffe firm (Peterson Decl. ¶ 2), the Center for Law in the
26  Public Interest (Diamond Decl. ¶ 1) and the Western Center on Law and Poverty
27  (Newman Decl. ¶ 3), are highly capable of representing the class.

28

1

         **e.**    **Rule 23(b)(2) Requirements**

2       Besides the four requirements of Rule 23(a), Plaintiffs must also satisfy the

3 requirements of one of the subdivisions of Rule 23(b).  This action satisfies the

4 requirements of Rule 23(b)(2).

5       Certification under Rule 23(b)(2) is appropriate where the opposing party

6 "has acted or refused to act on grounds generally applicable to the class, thereby

7 making appropriate final injunctive relief or corresponding declaratory relief with

8 respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  As the Advisory

9 Committee Notes explain, Rule 23(b)(2) was adopted to permit the prosecution of

10 civil rights actions.  *See* Fed. R. Civ. P. 23 Adv. Comm. Notes 1966 Amend.;

11 *Walters*, 145 F.3d at 1047.  This lawsuit seeks declaratory and injunctive relief

12 against allegedly illegal statewide practices concerning provision of mental health

13 services to children in foster care.  Since this action "complain[s] of a pattern or

14 practice that is generally applicable to the class as a whole," *id.*, it clearly satisfies

15 the Rule 23(b)(2) standard.

16                              **IV.**

17 **DISCOVERY ON "CLASS RELATED ISSUES" IS NOT NEEDED**

18 **BEFORE THE COURT CERTIFIES THIS CLASS**

19       Rule 23(c)(1) contemplates that the Court will determine whether to certify

20 the class "as soon as practicable after the commencement of an action."  The

21 Local Rules require that a motion for class certification be filed within 90 days

22 after service of a Complaint purporting to commence a class action.  L.R. 23-3.

23 Nevertheless, the State Defendants argue that class certification is "premature" at

24 this time, because, they have not yet had the opportunity to conduct discovery "on

25 a host of class-related issues."  Opp. at 24.  Without specifying what "class-related

26 issues" Defendants are referring to, Defendants appear to suggest they need

27 discovery to ascertain more clearly what Plaintiffs' claims are.  However, as the

28 Court has explained above in its analysis of the individual Rule 23 requirements,

1    the First Amended Complaint contains allegations sufficient to understand

2    Plaintiffs' claims for class certification purposes.  Moreover, Defendants have not

3    pointed out any particular factual uncertainties which, if resolved, would bear on

4    whether class certification would be appropriate.  Accordingly, Defendants'

5    request that the Court defer ruling on class certification pending unspecified

6    discovery is denied.

7                                                    **V.**

8                                **NOTICE IS NOT REQUIRED**

9            Rule 23(c)(2) requires that notice be provided to class members in Rule

10   23(b)(3) class actions.  Fed. R. Civ. P. 23(c)(2).  There is no such corresponding

11   requirement for Rule 23(b)(2) class actions.  *Eisen v. Carlisle & Jacquelin*, 417

12   U.S 156, 177 n. 14 (1974); *EEOC v. General Telephone Co.*, 599 F.2d 322, 334

13   (9th Cir. 1979) ("When an action is certified under Rule 23(b)(2) . . . absent class

14   members are not required to receive notice or to have the opportunity to opt-out of

15   the suit.").  Accordingly, no notice is required in this Rule 23(b)(2) action.

16                                                   **VI.**

17                                          **CONCLUSION**

18           For the foregoing reasons, Plaintiffs' motion to certify a class is

19   GRANTED.[7]  The following class is certified:

20           "Children in California who

21                   (a)      are in foster care or are at imminent risk of foster care
                             placement; and

22

23                   (b)      have a mental illness or condition that has been
                             documented or, had an assessment already been
                             conducted, would have been documented; and

24

25                   (c)      who need individualized mental health services,
                             including but not limited to professionally acceptable
                             assessments, behavioral support and case management

26                           services, family support, crisis support, therapeutic
                             foster care and other necessary services in the home or

27                           in a home-like setting, to treat or ameliorate their illness

28

---

[7] Docket No. 50.

21

1   or condition.

2        For the purposes of this case, 'imminent risk of foster care

3   placement' means that within the last 180 days a child has been

4   participating in voluntary family maintenance services or voluntary

5   family reunification placements and/or has been the subject of either a

6   telephone call to the Child Protective Services hotline or some other

7   documented communication made to a local Child Protective Services

8   agency regarding suspicions of abuse, neglect or abandonment."

9       However, Plaintiff Gary E. may not serve as a class representative, because

10   his recent relocation to Idaho prevents him from satisfying the Rule 23(a)(3)

11   typicality requirement.

12

13   IT IS SO ORDERED.

14

15   DATE:     _June 18, 2003_

16                              A. Howard Matz
                           United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

22