LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
BRIAN A. PROCEL (State Bar No. 218657)
bprocel@millerbarondess.com
DAVID W. SCHECTER (State Bar No. 296251)
dschecter@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 / Fax: (310) 552-8400

MARY C. WICKHAM (State Bar No. 145664)
mwickham@counsel.lacounty.gov
VICKI KOZIKOUJEKIAN (State Bar No. 171588)
vkozikoujekian@counsel.lacounty.gov
LAURA QUINONEZ (State Bar No. 253862)
lquinonez@counsel.lacounty.gov
OFFICE OF LOS ANGELES COUNTY COUNSEL
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite 648
Los Angeles, California 90012
Tel.: (213) 974-1811 / Fax: (213) 626-7446

Attorneys for The County Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KATIE A., et al., <br><br> Plaintiffs, <br><br> v. <br><br> DIANA BONTA, et al., <br><br> Defendants. | **CASE NO. 2:02-cv-05662-JAK-FFMx** <br><br> **DECLARATION OF BOBBY D. CAGLE IN SUPPORT OF THE COUNTY DEFENDANTS' RULE 60(b)(5) MOTION** <br><br> Hearing Date: December 9, 2019 <br> Time: 8:30 a.m. <br><br> Assigned to the Hon. John A. Kronstadt and Magistrate Judge Frederick F. Mumm |

## DECLARATION OF BOBBY D. CAGLE

I, Bobby D. Cagle, hereby declare as follows:

1. I am the Director of the Los Angeles County Department of Children and Family Services ("DCFS"), a party to this lawsuit. I have personal knowledge of some of the facts set forth herein, and for those that I do not have direct personal knowledge, I have been sufficiently informed by my departmental staff who do have personal knowledge such that I am able to testify to these facts. If called upon, I could and would testify to these facts in Court under oath.

2. I obtained a Bachelor's degree in Political Science and Sociology and a Master's degree in Social Work from the University of North Carolina at Chapel Hill ("UNC-Chapel Hill").

3. I am a member of the Board of Advisors for the UNC-Chapel Hill School of Social work, and I am a former member of the Board of Advisors of the Barton Child Law and Policy Center at Emory University School of Law. I am also a former member of the Executive Committee for the National Association of Public Child Welfare Administrators. In 2016, I was awarded the Annie E. Casey Foundation's Children and Families Fellowship.

4. Before accepting my current position of Director of DCFS, I was appointed Director of the Georgia Division of Family and Children Services by Governor Nathan Deal in June 2014. In that role, I served as the chief executive officer of the Georgia state agency responsible for providing child welfare services and nutrition and economic assistance throughout the state.

5. Previously, in 2011, Governor Deal appointed me Commissioner of the Georgia Department of Early Care and Learning. In the role I served as the chief executive officer of the agency responsible for the early education of Georgia's children, as well as assuring safety of children in thousands of private child care facilities throughout that state.

6. I started my career in 1989 as a child protective service social worker

1 and have more than 30 years of human service experience in child welfare, economic
2 services, domestic violence, sexual assault, substance abuse, early childhood
3 education and community corrections.

4     7. On December 1, 2017, I became Director of DCFS in Los Angeles
5 County. As DCFS Director, I am responsible for developing and implementing policy
6 initiatives to better serve and care for abused and neglected children in Los Angeles
7 County.

## COMPLIANCE WITH FEDERAL LAW

9     8. I am aware that in 2002 the plaintiffs, who were children in the County's
10 foster care system with mental health needs, alleged they did not receive adequate
11 mental health screens or assessments, were denied necessary mental health treatment
12 and were "warehoused" in institutional settings that were inappropriate for their
13 needs. I understand that plaintiffs alleged that these circumstances gave rise to
14 violations of EPSDT provisions of the Medicaid Act, the Americans with Disabilities
15 Act ("ADA"), the Rehabilitation Act ("RHA") and the Fourteenth Amendment to the
16 U.S. Constitution.

17     9. DCFS has changed its practices since 2002 to provide improved child
18 welfare services to children in foster care. DCFS has implemented a new mental
19 health screening system that is working to benefit the plaintiff class. DCFS, in
20 collaboration with DMH, has increased the intensive mental health services and
21 programs available for foster children with intensive needs. Furthermore, DCFS has
22 implemented new policies and programs designed to reduce the number of children
23 placed in congregate care and, instead, to keep children safely in their birth homes or
24 to place them in the most home-like settings appropriate to their needs.

25     10. Having headed child welfare agencies in three states, I have never
26 observed the quantity, quality and access to appropriate services for children and
27 families as those available in Los Angeles County. I have assessed the system as a
28 whole; and while not perfect, in many respects it serves as a model for the entire

nation.

11. The Director of the Department of Mental Health—Dr. Jonathan Sherin—and I have been aligned in vision and commitment, as are our departments. That vision is for children in contact with DCFS to receive timely and appropriate mental health services in order to improve their circumstances.

## ADMINISTRATIVE ISSUES

12. Early in my 21-month tenure as Director of DCFS, I noted the need to accelerate rates of practitioner certifications for social work staff, which I quickly directed. In order to expedite the formation of Child and Family Teams ("CFT") and the convening of initial and follow-up team meetings, I also directed strike teams of experienced practitioners to support newly-certified line staff in four DCFS offices where the support was needed.

13. Within a few months, the data dramatically improved, particularly for children and youth placed in group care. It is my goal to continue this enhanced momentum so that all children who come in contact with DCFS benefit from the evolution of child welfare service delivery known as the Core Practice Model.

14. Paragraph 13 of the 2003 Settlement Agreement provides that the Katie A. Advisory Panel ("Panel") "must act in a manner so as to minimize disruption to the routine operation of the County foster care system."

15. Unfortunately, soon after becoming DCFS Director, I noted the opposite. Within an environment of finite departmental staffing resources to accomplish our mission, I observed the Panel members and Plaintiffs' attorneys placing a heavy burden on high- and mid-level DCFS managers, who were spending inordinate amounts of time and effort supporting the monitoring work of the Panel and the Plaintiffs' attorneys as opposed to serving abused and neglected children and their vulnerable families.

16. I also noted that the Panel and Plaintiffs' attorneys were utilizing a primary monitoring strategy of scrutinizing the process elements of Los Angeles

County's practice rather than the outcome improvements that overall practice change was producing.

17. At various junctures throughout bi-weekly conference calls, quarterly in-person retreats, regular and frequent e-mail communications or written independent case studies, the individual roles of the Panel and the Plaintiffs' attorneys were blurred. They often used these opportunities to issue shifting recommendations or to impose higher expectations on matters such as the specific accuracy of a child's strengths and needs identified by the child's professional social worker or mental health clinician; or on the correctness of the responsive services and supports in a child's case plan.

18. This all became unsustainable. In fact, it pointed to the predominant belief of the Panel and Plaintiffs' attorneys that instituting a specific practice process naturally leads all change. Unfortunately, however, the notable time and effort my staff devoted to attending to this predominant belief failed to result in Reports to Court, submitted by the Panel, which credited Los Angeles County for the magnitude of its progress in meeting the objectives of the Settlement Agreement.

19. A recent inventory, conducted at my direction, revealed that DCFS is currently administering 388 different projects, programs, pilots and initiatives. I am exercising my authority to reduce the number of these projects to a manageable number by drilling down with great depth into each.

20. My goal is to streamline redundancies and strategically align my department's focus on three key priorities: safe children; healthy families; and strong communities.

21. I have engaged departmental staff, stakeholders and community partners in a robust strategic planning process called "Invest LA," organized around three core investment areas: quality services to children, youth and families; workforce excellence; and community and cross sector collaboration.

22. The backbone of "Invest LA" rests on five foundational practice

pillars: Prevention and Aftercare; Brain Science and Trauma; The Core Practice Model; A Culture of Safety; and A Culture of Equity. This strategic framework is designed to build upon system improvements achieved over the past decade by focusing on high leverage objectives and strategic initiatives.

23. Within current and future federal, state and local funding levels, the success of "Invest LA" requires that I organize, align and manage my department's staffing and other resources to support these core investment areas and practice pillars. A foster child's timely access to individualized, quality mental health services is a principal objective of Invest LA.

24. While I appreciate the Panel's continued advice and recommendations for my consideration, as a Department Head, I am responsible for making final decisions on how best to operate the County's child welfare department. However, the Panel and Plaintiffs' attorneys sometimes disagree with me on the appropriate alternative.

25. One such area of disagreement is Los Angeles County's continued reliance on the "Immersion" approach to Core Practice Model implementation.

26. In January 2015, citing stalled progress, the Panel and Plaintiffs' attorneys recommended that Los Angeles County pursue an "Immersion" approach to accelerating Core Practice Model implementation. The Immersion approach relies on a substantial and expensive overlay of additional staffing and other resources in a select few DCFS "Immersion Offices" to fully implement practice change within a specified amount of months, prompting geographic-based exits from the lawsuit, in serial manner.

27. Starting in 2016, DCFS began Immersion in two DCFS Offices. In 2017, DCFS expanded Immersion to another two DCFS Offices.

28. Unfortunately, the approach did not produce its intended results. Therefore, in 2018, I decided to abandon the Immersion approach and returned to a countywide approach to full Core Practice Model implementation, which

is also more effective and sustainable for the county in the long-term.

29. While Immersion may have yielded success in other state-led child welfare agencies under consent decree, it is not conducive to success within a County-led agency, for which staffing resources are allocated to the entire County and not only to select DCFS offices. However, with this case pending, I am not entirely free to reject the Panel's recommendations without running the risk of subjecting the County, DCFS and perhaps myself to the contempt power of the Court.

30. Based on my education and prior experience, I believe the department to be meeting the needs of Los Angeles County's children in foster care. Further, I believe the strategic direction outlined by Invest LA is the appropriate approach to build upon prior successes and move the department to even better performance. Unfettered design and implementation of those plans is a necessary prerequisite.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of August, 2019 at Los Angeles, California.

Director Bobby D. Cagle
Department of Child and Family Services