UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 1036); DEFENDANT'S MOTION TO VACATE 2003 CONSENT DECREE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5) (DKT. 975)**

**I.   Introduction**

In 2002, five minors in foster care brought this class action against Los Angeles County, the Los Angeles County Department of Children and Family Services ("DCFS"), the Director of DCFS (together with Los Angeles County and DCFS, the "County Defendants"), the Director of the California Department of Health Services ("DHS") and the Director of the California Department of Social Services ("CDSS," together with the Director of DHS, the "State Defendants"). Dkt. 1. Plaintiffs alleged that Defendants were not providing to youth in foster care mental health services as required under California and federal law. *Id.*

In 2003, Plaintiffs and the County Defendants entered a settlement agreement (the "2003 Settlement Agreement"). Dkt. 46. As part of that agreement, the parties agreed to appoint a panel of experts in child welfare (the "Advisory Panel") to monitor the compliance of the County Defendants with the settlement terms, including their implementation. *Id.* In July 2003, Judge Matz, who was then presiding over this action, approved the 2003 Settlement Agreement. Dkt. 128 (the "Consent Decree"). Since that time, the County Defendants have remained under judicial supervision. In light of the impending retirement of Judge Matz, in March 2013, this action was transferred to this bench officer. Dkt. 844. Many proceedings followed with respect to compliance with the Consent Decree.

In August 2019, the County Defendants filed a Motion to Vacate the Consent Decree pursuant to Fed. R. Civ. P. 60(b)(5). Dkt. 975 (the "Rule 60(b)(5) Motion"). They argued that "there are no ongoing violations of federal law that could support continued enforcement of the 2003 Consent Decree." *Id.* at 2. Rather than litigate the Rule 60(b)(5) Motion, Plaintiffs and the County Defendants entered into a new settlement agreement, which was executed in September 2020. Dkt. 1036-1 (the "2020 Settlement Agreement").

On December 4, 2020, the parties filed a Joint Motion for Preliminary Approval of Class Action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

Settlement. Dkt. 1036 (the "Motion"). On January 11, 2021, the Panel filed an opposition to the Motion. Dkt. 1040 (the "Opposition"). On February 1, 2021, the County Defendants and Plaintiffs each filed a reply in support of the Motion. Dkt. 1043 (the "Plaintiffs' Reply"); Dkt. 1044 (the "County's Reply").

A hearing on the Motion was held on June 7, 2021. Dkt. 1050. At that time, the County Defendants and the Advisory Panel were directed to file supplemental briefing as to certain issues. *Id.* On June 14, 2021, the supplemental briefing was filed. Dkts. 1052, 1053. On June 21, 2021, replies were filed. Dkts. 1056, 1057, 1058.

On December 10, 2021, the parties filed a Joint Status Report (Dkt. 1071), as to the status of the proceedings, in which they sought "further guidance from the Court as to the pending Motion for Preliminary Approval of the Settlement." Dkt. 1071 at 4. On July 18, 2022, the Advisory Panel responded, stating that it "still opposes" the Motion. Dkt. 1073 at 2.

For the reasons stated in this Order, the Motion is **GRANTED**.

II.     **Factual and Procedural Background**

      A.     2003 Settlement Agreement and Implementation

The 2003 Settlement Agreement established certain objectives for the County Defendants. Dkt. 499 ¶ 5. Specifically, the County Defendants agreed to ensure that members of the settlement class shall:

(a) promptly receive necessary, individualized mental health services in their own home, a family setting or the most homelike setting appropriate to their needs;
(b) receive the care and services needed to prevent removal from their families or dependency or, when removal cannot be avoided, to facilitate reunification, and to meet their needs for safety, permanence, and stability;
(c) be afforded stability in their placements, whenever possible, since multiple placements are harmful to children and are disruptive of family contact, mental health treatment and the provision of other services; and
(d) receive care and services consistent with good child welfare and mental health practice and the requirements of federal and state law.

*Id.*

As part of fulfilling these general objectives, the County Defendants agreed to certain, specific obligations. *Id.* ¶ 6. Further, to ensure compliance with both the general objectives and specific obligations, the parties agreed to create the Advisory Panel. *Id.* ¶ 7. The Advisory Panel was to monitor the compliance by the County Defendants with the 2003 Settlement Agreement, and to present regular written reports to the parties and the Court regarding its findings and recommendations. *Id.*

The Consent Decree certified a settlement class under Fed. R. Civ. P. 23(b)(2). Dkt. 128 ¶ 2. The settlement class was subsequently modified, and defined as follows:

      The class members include children and young adults who:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

    (a) are in the custody of [DCFS] in foster care or are at imminent risk of foster care placement by DCFS; and

    (b) are eligible for services under the Early and Periodic Screening Diagnosis and Treatment ("EPSDT") program of the Medicaid Act, as defined in 42 U.S.C. § 1396 et seq.; and

    (c) have a mental illness or condition that is documented or, had an assessment been completed, could have been documented; and

    (d) need individualized mental health services, including but not limited to professionally acceptable assessments, behavioral support and case management services, family support, crisis support, therapeutic foster care, and other medically necessary services in the home or in a home-like setting, to treat or ameliorate their illness or condition.

Dkt. 149 at 1-2.

In 2005, the Advisory Panel issued a two-year report in which it found that the County Defendants had not complied with the 2003 Settlement Agreement. Dkt. 499 ¶ 9. Subsequently, the County Defendants developed a plan to achieve full compliance with the 2003 Settlement Agreement. *Id.* ¶ 10. In 2006, Judge Matz ordered the County Defendants to amend that plan to address certain shortcomings. *Id.* ¶ 121. In 2008, the Los Angeles County Board of Supervisors approved a strategic plan (the "Strategic Plan"), which was modified in 2009. Dkt. 688 at 4-5. Plaintiffs, County Defendants and the Advisory Panel all supported the Strategic Plan as modified, and it was approved by Judge Matz. *Id.* at 5; Dkt. 689.

In 2011, Plaintiffs, the County Defendants and the Advisory Panel stipulated to specific exit conditions (the "Exit Conditions"), which were approved by Judge Matz. Dkt. 773; Dkt. 776. The parties and the Advisory Panel agree that, although the County Defendants have made progress in implementing the Strategic Plan, they have not met all of the Exit Conditions. Dkt. 1036-3 at 13-14; Dkt. 1040 at 8-9.

    B.    Rule 60(b)(5) Motion

On February 19, 2019, counsel for the County Defendants informed counsel for Plaintiffs that the County Defendants intended to file the Rule 60(b)(5) Motion. Dkt. 1036-4 ¶ 5. The next day, counsel for the County Defendants sent a letter to the three members of the Advisory Panel informing them that the County was suspending the operations of the Advisory Panel. *Id.* ¶ 6; *see also* Dkt. 1040 at 36. Marty Beyer, a member of the Advisory Panel, declares that the County Defendants terminated quarterly retreats they had held with the Advisory Panel, "blocked the [Advisory] Panel's access to personnel from DCFS and [the Department of Mental Health ("DMH")], and withheld from the [Advisory] Panel the relevant data the [Advisory] Panel needed to continue to evaluate the County's compliance with the Strategic Plan and the exit conditions." Dkt. 1040 at 39. Beyer declares that the Advisory Panel "has not been permitted to update its knowledge of most of the County's activities to meet the needs of the class members since the [Advisory] Panel's last meeting with the County in December of 2018." *Id.* at 37.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

In August 2019, the County Defendants filed the Rule 60(b)(5) Motion, which sought to have the Consent Decree vacated. Dkt. 975. In support of the Motion, the County Defendants argued that, under *Horne v. Flores*, 557 U.S. 433, 451 (2009), "[f]ederal courts only have jurisdiction to enforce consent decrees so long as there is a federal violation to remedy." Dkt. 975 at 19. The County Defendants argued that they are not presently acting in violation of federal law as to their relevant obligations. *Id.* at 23-30. With respect to the three Exit Conditions to which the parties previously agreed, the County Defendants argued that two have been "substantially achieved." *Id.* at 17. As to the other Exit Condition, in support of the Rule 60(b)(5) Motion, the County stated:

> The [other] Exit Condition is for the County Defendants to achieve a passing score on each component of a Qualitative Service Review ("QSR")—a case review tool that attempts to score the child and family's progress and the effectiveness of care and services provided to children in DCFS' care. [FN3] [Citation omitted]. The QSR is not part of, and is not required by, federal law.

*Id.* (emphasis removed).

Robert D. Newman, counsel for Plaintiffs, declares that, after the County Defendants filed the Rule 60(b)(5) Motion, Plaintiffs propounded three sets of requests for production. Dkt. 1036-4 ¶ 11. Newman declares that the County Defendants produced -- and Plaintiffs' counsel reviewed -- 15,000 pages of documents. *Id*. Plaintiffs also conducted the depositions of three Los Angeles County employees who submitted declarations in support of the Rule 60(b)(5) Motion. *Id.* ¶ 12. Newman declares that Plaintiffs "arranged to take at least ten more depositions." *Id.* Each of the three County Defendants propounded a set of interrogatories to Plaintiffs, and Los Angeles County served document requests on Plaintiffs. *Id.* ¶ 13.

      C.     Negotiation and Submission for Approval of 2020 Settlement Agreement

Newman declares that, in January 2020, the parties began discussing a potential settlement. *Id.* ¶ 14. In support of the Motion, the parties state: "Plaintiffs wanted additional benefits for the class. The County Defendants wanted certainty on when this case would end." Dkt. 1036 at 8.

Newman declares that the parties participated in two full-day mediations with Judge Jay Gandhi (Ret.): the first on May 6, 2020, and the second on May 28, 2020. Dkt. 1036-4 ¶¶ 15-16. Newman declares that, over a period of five months, there were "at least twelve settlement conferences between counsel, in addition to numerous exchanges of proposals and counter-proposals." *Id.* ¶ 16. A declaration by counsel for the County Defendants confirms these statements. *See* Dkt. 1036-11. Newman declares that the negotiations were "adversarial" and "[m]ost issues were the subject of intense bargaining with considerable give and take by both sides." Dkt. 1036-4 ¶ 17. Newman further declares that "Plaintiffs' counsel devoted hundreds of hours, if not more than one thousand hours, to these settlement negotiations." *Id.*

Newman also declares that "Plaintiffs' counsel did not make a proposal on attorneys' fees and costs until the parties had reached settlement on nearly all the substantive parts of the settlement agreement." *Id.* ¶ 18. Newman declares that Plaintiffs' counsel calculated a lodestar figure of approximately $2.2 million in attorney's fees, offered to settle for approximately $2 million in attorney's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

fees and costs, and ultimately agreed to $1.4 million in attorney's fees and costs. *Id.*

In September 2020, Plaintiffs and the County Defendants executed the 2020 Settlement Agreement. Dkt. 1036-1 (copy of the agreement).

Beyer declares that "the [Advisory] Panel was frozen out of [s]ettlement discussions." Dkt. 1040 at 40. He declares:

> 17. On August 13, 2020, the [Advisory] Panel expressed significant reservations on a call requested by the Plaintiffs' counsel regarding six draft settlement proposals that had been provided to the Panel on August 10, 2020. On August 18, 2020, the County asked the [Advisory] Panel to discuss the draft settlement. The [Advisory] Panel continued to request a copy of the new Settlement Agreement before preparing comments for the parties.
>
> 18. The [Advisory] Panel received the final signed Settlement Agreement from the County on September 18, 2020, after the County Board of Supervisors had voted in favor of the proposed settlement. On October 27, 2020, the [Advisory] Panel provided comments on the Settlement Agreement to the parties. The County did not initiate a call with the [Advisory] Panel to discuss the [Advisory] Panel's concerns until November 30, 2020. On December 4, 2020, the parties jointly submitted the unchanged Settlement Agreement to the Court for preliminary approval.

Dkt. 1040 at 37-38.

On September 23, 2020, Plaintiffs and the County Defendants filed a Joint Stipulation Re: Class Action Settlement. Dkt. 1031 (the "Stipulation"). Among other things, the Stipulation provided:

- The Rule 60(b)(5) Motion would be taken off calendar;
- The County's obligations under certain prior agreements -- including the 2003 Settlement Agreement, Strategic Plan and Exit Conditions -- would be stayed;
- The Advisory Panel would no longer perform its current responsibilities;
- The parties would begin implementing the 2020 Settlement Agreement; and
- Plaintiffs may file a motion to enforce the 2020 Settlement Agreement following the dispute resolution process outlined therein.

Dkt. 1031 at 4-5.

The Stipulation was approved. Dkt. 1033. The parties were then ordered to submit a joint report stating whether there are any non-parties with a substantial interest in the terms of the 2020 Settlement Agreement who should be provided notice of the opportunity to file an amicus brief regarding whether it should be approved. *Id.* at 3. On October 19, 2020, the parties filed a joint report identifying 50 potentially interested non-parties (the "Interested Non-Parties"). Dkt. 1034.

On October 20, 2020, the parties were ordered to file a motion for preliminary approval of the 2020 Settlement Agreement by December 4, 2020. Dkt. 1035 (the "Briefing Order"). The parties were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

ordered to serve the Interested Non-Parties, on or before December 11, 2020, with a copy of the 2020 Settlement Agreement, the motion for preliminary approval and the Briefing Order. *Id.* The Briefing Order invited any of the Interested Non-Parties to file an amicus brief regarding the motion for preliminary approval and/or 2020 Settlement Agreement or, in lieu of an amicus brief, a less formal comment regarding the motion for preliminary approval and/or the Settlement Agreement. *Id.* Any amicus brief or less formal comment was to be filed by January 11, 2021. *Id.* The Advisory Panel was also ordered to file any response to the motion for preliminary approval or before January 11, 2021. *Id.*

On December 14, 2020, the parties filed a joint report stating that they served the Interested Non-Parties, on December 11, 2020, via overnight mail and, with one exception, via email, with a copy of the Motion, the 2020 Settlement Agreement and the Briefing Order. Dkt. 1038. The joint report stated that the parties also served an additional organization identified by the Advisory Panel. *Id.* No amicus brief or less formal comment was filed by any Interested Non-Party.

    D.    Terms of 2020 Settlement Agreement

The 2020 Settlement Agreement sets forth five principal objectives:

> (a) increase the number of Class members who receive [Intensive Care Coordination ("ICC")] and [Intensive Home Based Services ("IHBS")], when medically necessary, in a timely manner and in appropriate amount and duration, (b) prevent the unnecessary psychiatric hospitalization, placement in [a] [Short Term Residential Therapeutic Program ("STRTP")] or group home and multiple placements of Class members, (c) provide [Therapeutic Foster Care ("TFC")] to Class members for whom this mental health service is medically necessary, (d) allow the County to exit this litigation by the Expiration Date, and (e) allow the Parties to avoid the risk and expense of litigating the County's Motion.

Dkt. 1036-1 at 14 ¶ 56.

In its Opposition, the Advisory Panel states it "wholeheartedly endorses" the first three objectives, and that these "broad objectives were the goals of the original *Katie A.* settlement, the exit conditions, and the Panel's advisory work with the County." Dkt. 1040 at 16. In furtherance of these objectives, the 2020 Settlement Agreement identifies and details seven agreements. Dkt. 1036-1 at 14-25 ¶¶ 57-64. These agreements provide that the County Defendants will implement certain practices, provide certain training to their staff and report to Plaintiffs on the implementation of the 2020 Settlement Agreement and certain data. *Id.* "County Work Plans" are appended to the 2020 Settlement Agreement. *Id.* at 39-49. These work plans correspond to six of the seven agreements identified and detailed in the text of the 2020 Settlement Agreement. *Id.*

The 2020 Settlement Agreement also provides that, upon a final approval, it will supersede the 2003 Settlement Agreement and every subsequent agreement, including the Strategic Plan and Exit Conditions. *Id.* at 14 ¶ 55. It further provides that those prior agreements will become null and void upon the Expiration Date. *Id.* The Expiration Date is defined as June 30, 2021, or the date that the Court grants final approval to the 2020 Settlement Agreement, whichever is later. *Id.* at 13 ¶ 54. The 2020 Settlement Agreement also provides that, on the Expiration Date, the jurisdiction of the Court over

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

the matter will expire. *Id.* It further provides that this date for the expiration of jurisdiction shall not be extended for any reason. *Id.* The 2020 Settlement Agreement states that its terms "are not exit conditions and no provision of the Agreement, agreement to make corrective measures or any Court order entered in connection therewith . . . will be enforceable beyond the expiration date." *Id.*

The 2020 Settlement Agreement contains the following release:

> In consideration of the covenants and promises contained herein, Plaintiffs and their successors, assigns, agents and representatives hereby release, absolve and discharge the County of Los Angeles, DCFS, DMH, the Directors of DCFS and DMH from all rights, claims, demands, obligations, causes of action and suits of all kinds and descriptions that seek declaratory and/or injunctive relief on a class-wide basis based on acts or omissions that occurred prior to the Effective Date and that arise from the identical factual predicate as the claims at issue in the *Katie A.* litigation (the "Released Claims"). The Released Claims do not include individual or class claims for damages.

*Id.* at 27-28 ¶ 76. The Effective Date of the Settlement Agreement is September 18, 2020. *Id.* at 11 ¶ 47, 32-38.

The County Defendants agreed to pay Plaintiffs' counsel $1.4 million in attorney's fees and $12,095 in costs. *Id.* at 26 ¶ 68.

### III. Analysis

    A.    Legal Standards

Fed. R. Civ. P. 23(e) requires a "district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (emphasis removed) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). Courts generally follow a two-step process in considering whether to approve the settlement of a class action. In the first step, the court makes a preliminary determination as to whether the proposed settlement is fundamentally fair, adequate and reasonable. In the second step, which occurs after preliminary approval, notification to class members and the compilation of information as to any objections by class members, a court determines whether final approval is warranted. *See* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1797.5 & n.6 (3d ed. Apr. 2022 update); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062-63 (C.D. Cal. 2010) ("Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval [where a court determines whether a proposed settlement is in range and whether notice should be sent to class members] followed by a final fairness hearing [where a court takes a closer look, considering objections and other developments, to make a final determination].").

Public policy favors settlement. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."). As the Ninth Circuit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

stated in *Officers for Justice*,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.*

In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Courts in the Ninth Circuit apply the seven "*Hanlon* factors":

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity and likely duration of further litigation;
(3) the amount offered in settlement;
(4) the extent of discovery completed and the stage of the proceedings;
(5) the experience and views of counsel;
(6) any evidence of collusion between the parties; and
(7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000) (citing *Hanlon,* 150 F.3d at 1026). Each factor does not necessarily apply to every class action settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Fed. R. Civ. P. 23(e) also provides a structure for evaluating a proposed settlement. The factors set forth in Rule 23(e) distill the considerations historically used by federal courts to evaluate class action settlements. As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. Fed. R. Civ. P. 23, Advisory Committee's Notes on 2018 Amendments.

Under Rule 23(e)(2), in considering whether to approve a class action settlement, a court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
 (i) the costs, risks, and delay of trial and appeal;
 (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
 (iii) the terms of any proposed award of attorney's fees, including timing of payment;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

       and
       (iv) any agreement required to be identified under Rule 23(e)(3); and
  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

    B.    Application

        1.    <u>Whether the Class Representatives and Counsel Have Adequately Represented the Settlement Class</u>

"The extent of the discovery conducted to date and the stage of the litigation are both indicators of . . . Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." (quoting 5 Moore's Federal Practice, § 25.85[2][e] (Matthew Bender 3d ed.))).

Newman has been co-counsel for Plaintiffs since this action was filed in 2002. Dkt. 1036-4 ¶ 2. He declares that he was one of the principal negotiators in the discussions that led to the 2003 Settlement Agreement. *Id.* ¶ 3. Newman declares that "Plaintiffs' counsel have been monitoring the County's progress towards implementing the original settlement ever since the Court gave its final approval to the settlement in 2003." *Id.* ¶ 4. Newman adds that, over the past ten years, Antionette Dozier of the Western Center on Law and Poverty, for which Newman serves as General Counsel, and Ira Burnim of the Bazelon Center for Mental Health Law have monitored the actions of the County Defendants. *Id.* ¶¶ 1,4. Newman was also involved in the negotiations that led to the 2020 Settlement Agreement. *See id.* ¶¶ 15, 18.

Kimberly Lewis, who has been co-counsel for Plaintiffs since 2002, declares that she "was one of the lead attorneys who monitored the [2003] Settlement Agreement." Dkt. 1036-8 ¶ 6. She declares that, "[f]rom 2003 through 2010, I regularly met with County leadership at the [DMH] and the [DCFS], as well as with the then six-member expert Advisory Panel." *Id.* Lewis declares she was also "one of the lead attorneys in reaching a Settlement Agreement with the State of California in 2011 and was one of two attorneys for Plaintiff responsible for monitoring and implementing that agreement with the State until its expiration on December 1, 2014." *Id.* Lewis was also involved in the negotiations that resulted in the 2020 Settlement Agreement. *Id.* ¶ 9.

Melinda Bird, who has been co-counsel for Plaintiffs since 2002 and has been "actively involved in the case since then," was also involved in the negotiations that led to the 2020 Settlement Agreement. Dkt. 1036-7 ¶ 2; Dkt. 1036-4 ¶ 15.

Neal Marder, co-counsel for Plaintiffs and a partner at Akin Gump Strauss Hauer & Feld LLP, declares that, "[s]ince February 2020, Akin Gump attorneys and support professionals have devoted nearly 300 hours of services and administrative resources to this case." Dkt. 1036-10 ¶ 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

As noted, Newman declares that, after the County Defendants filed the Rule 60(b)(5) Motion, Plaintiffs propounded three sets of requests for production. Dkt. 1036-4 ¶ 11. As also noted, Newman declares that the County Defendants produced -- and Plaintiffs' counsel reviewed -- 15,000 pages of documents. *Id*. Plaintiffs also conducted the depositions of three Los Angeles County employees who had submitted declarations in support of the Rule 60(b)(5) Motion. *Id.* ¶ 12. Newman declares that Plaintiffs also "arranged to take at least ten more depositions." *Id.*

There is ample evidence that Plaintiffs' counsel have vigorously and adequately represented Plaintiffs, for approximately 20 years. They are familiar with the action and were well-positioned to make an informed decision regarding settlement.

### 2. Whether the Settlement Was Negotiated at Arm's Length

Courts "ha[ve] long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. However, courts will intercede to determine that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* (quoting *Hanlon*, 150 F.3d at 1027). The Ninth Circuit has identified three factors that may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund . . . ." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (citations and internal quotation marks omitted).

There is no evidence that the settlement was procured by fraud, overreaching or collusion. As noted, Newman declares that the parties participated in two full-day mediations with a very experienced and able mediator, Judge Gandhi (Ret.): the first on May 6, 2020, and the second on May 28, 2020. Dkt. 1036-4 ¶¶ 15-16. Newman declares that over a period of five months, there were "at least twelve settlement conferences between counsel, in addition to numerous exchanges of proposals and counter-proposals." *Id.* ¶ 16. A declaration by counsel for the County Defendants confirms these statements. *See* Dkt. 1036-11. Newman declares that the negotiations were "adversarial" and "[m]ost issues were the subject of intense bargaining with considerable give and take by both sides." Dkt. 1036-4 ¶ 17. Newman further declares that "Plaintiffs' counsel devoted hundreds of hours, if not more than one thousand hours, to these settlement negotiations." *Id.*

It is material that the County Defendants have agreed to pay Plaintiffs' counsel a large amount of attorney's fees, notwithstanding that members of the class will not receive any monetary payments. The Advisory Panel notes Plaintiffs' counsel will "benefit" if the settlement is approved. However, there is no evidence that the attorney's fees are not consistent with the extensive work Plaintiffs' counsel has performed in this action. Nor is there any evidence that Plaintiffs' counsel, some of whom have been involved in this matter since its inception, elected to place their financial interests above the non-financial needs of those whom they have represented for many years. Furthermore, Newman declares that "Plaintiffs' counsel did not make a proposal on attorneys' fees and costs until the parties had reached settlement on nearly all the substantive parts of the settlement agreement." *Id.* ¶ 18.

Based on the foregoing, it is determined that the settlement was negotiated at arm's length.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

3. <u>Whether the Relief Provided for the Settlement Class is Adequate</u>

As noted, the 2020 Settlement Agreement includes seven components, which provide that the County Defendants will implement certain practices, provide certain training to their staff, and report to Plaintiffs regarding the implementation of the 2020 Settlement Agreement and certain data. Dkt. 1036-1 at 14-25 ¶¶ 57-64. "County Work Plans" are appended to the 2020 Settlement Agreement. *Id.* at 39-49. These work plans correspond to six of the seven agreements. *Id.*

The Advisory Panel contends that the 2020 Settlement Agreement has three, clear deficiencies. Dkt. 1040 at 5, 14. *First*, it relieves the County of all obligations under the existing settlement despite the County's failure to meet the original Exit Conditions to which it agreed. *Id. Second*, it imposes no continuing obligations on the County after the fixed expiration date. *Id. Third*, even if the County Work Plans appended to the Settlement Agreement were part of an ongoing commitment, they would be inadequate to meet the objectives of the settlement and the needs of the class members. *Id.* In particular, the Advisory Panel highlights that the County Work Plans "assert that the County will start to 'implement' certain practices but provide no specific guarantees or metrics of the County's progress or class member outcomes." *Id.* at 17.

Rule 23(e) requires that a settlement provide class members relief that is "adequate." Fed. R. Civ. P. 23(e)(2)(C). Therefore, an agreement can be approved even if better terms could have been envisioned or proposed. Rule 23(e) also provides that, in assessing whether relief is adequate, a court must consider "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Here, the Advisory Panel has raised substantial concerns about elements of the 2020 Settlement Agreement. They highlight that the relief provided by the 2020 Settlement Agreement is limited. However, the 2020 Settlement Agreement has several, clear benefits for the Class. It was negotiated after the County Defendants had filed the Rule 60(b)(5) Motion, and was completed with the assistance of an experienced neutral. Further, at time of the negotiations, the Rule 60(b)(5) Motion was pending. If the parties did not reach a settlement, and if that Motion were later granted, all benefits the class received under the pre-existing agreements would have ended. Collectively, this supports a finding of adequacy.

It is also relevant that the 2020 Settlement Agreement includes a narrow release of liability. *See* Dkt. 1036-1 at 27-28 ¶ 76. The County Defendants are not released from individual or class claims for damages. *Id.* Moreover, the Settlement Agreement does not preclude individual class members from bringing a new action for declaratory and/or injunctive relief based on violations that occurred after September 18, 2020, i.e., ongoing violations. *Id.*

In the Opposition, the Advisory Panel details its involvement in implementing the 2003 Settlement Agreement and the subsequent Strategic Plan. Dkt. 1040 at 12-13. It highlights its contributions in assisting the County Defendants to make progress toward meeting the exit conditions. *Id.* The Advisory Panel argues that its reaction to the 2020 Settlement Agreement -- strong disapproval -- is relevant to the preliminary approval inquiry because its members' have "substantial expertise in this area" and it "has no stake in the outcome of this litigation aside from its deep concern for the well-being of children." Dkt. 1040 at 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

The work of the Advisory Panel in this matter has been exceptional. That it was excluded from the negotiations as to the 2020 Settlement Agreement raises issues as to the settlement's adequacy. Why did the parties fail to solicit input from such experienced and dedicated persons who are very familiar with the issues presented by this litigation? However, the Advisory Panel has been heard through the briefing on this Motion. Its role is distinct from that of counsel for Plaintiffs. Further, as noted, there was a risk that the Rule 60(b)(5) Motion could have been granted with no further relief for members of the class. When viewed in light of all of these circumstances, the objections that have been raised by the Advisory Panel are not sufficient to show that the terms of the 2020 Settlement Agreement are inadequate or obviously deficient for purposes of assessing preliminary approval.

Furthermore, on December 10, 2021, Plaintiffs and the County Defendants filed a joint status report stating that they had resolved any outstanding issues related to the County's compliance with the 2020 Settlement Agreement. *See* Dkt. 1071 at 3-4. Thus, the agreed-upon deadline for Plaintiffs to file any motion to enforce the Agreement passed on September 30, 2021, and Plaintiffs did not file one. *Id.* at 2-4. The status report adds that, during the corresponding time period, the parties "exchanged written correspondence and participated in several conference calls with the objective of ensuring the County's compliance" with the 2020 Settlement Agreement. *Id.* at 2. The report states that, as a result of those conversations, the County implemented additional measures including preparing and delivering to Plaintiffs and the Advisory Panel additional data regarding the County's compliance. *Id.* at 2-3. This additional data includes a customized report concerning placement stability, which is at least a partial response to the Advisory Panel's request to have County's monthly reports supplemented with metrics regarding placement disruption prevention. *Id.*; *see* Dkt. 1052 at 1-4 (Advisory Panel's statement regarding recommended additional metrics); Dkt. 1056 (Plaintiffs' response supporting the Advisory Panel's recommendation); Dkt. 1058 (County's response indicating willingness to provide additional reporting subject to limitations in County's data collection capabilities and resources).

As also noted, on July 18, 2022, the Advisory Panel responded to the parties' joint status report. *See* Dkt. 1073. The Panel confirms its ongoing opposition to the Motion. In support of this position, it argues that the County's monthly reports under the Agreement are inadequate in their reporting of "mental health services provided and the child and family outcomes." *Id.* at 2. This includes the claim that the County has not provided data "to prove that those mental health services are being provided to children in sufficient intensity and for a sufficient duration and in sufficient quantity to meet their needs." *Id.* The Panel also notes that, for the period from January 2021 to January 2022, the number of children each month who have experienced placement changes "either due to a foster home request or because foster parents could not manage the children's behavior ranged from a low of 129 to a high of 176." *Id.* at 3. These concerns are substantial. However, they are not sufficient to show, independently, that the Agreement is inadequate or plainly deficient. For example, the data cited by the Panel does not show that the number of placement changes has increased significantly, that insufficient mental health services are being provided to children in need, or that the County has not otherwise complied with the terms of the Agreement.

Plaintiffs' counsel has made a sufficient showing that their diligent representation has resulted in a settlement agreement that provides the class adequate relief relative to the liability released, and that the County Defendants have complied with the terms of the 2020 Settlement Agreement. This determination is without prejudice to the Advisory Panel renewing its objections with respect to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

motion for final approval of the settlement. The reaction of the members of the class to the 2020 Settlement Agreement may also provide useful information to be considered in connection with that motion.

It is also noteworthy that none of the 50 Noticed Interested Non-Parties elected to submit an amicus brief or informal comment about the 2020 Settlement Agreement settlement. Although there can be many reasons for their respective decisions, the absence of any objections nonetheless provides some support for the adequacy of the Agreement. The deep commitment of such persons to the well-being of vulnerable young people could certainly have led to the submission of comments or objections. And, it would have been easy to have done so using one or more of the available procedures.

For the foregoing reasons, it is determined that the Settlement Agreement provides adequate relief to the class members. The parties are encouraged to work collaboratively with the Advisory Panel as to the ongoing monitoring of the County's compliance with the Agreement. In light of the joint status report and the Advisory Panel's recent response, these efforts should include conferring with the Advisory Panel about the County's reporting of outcome measures regarding its activities, including data about the number of placements, the number of placement changes, and as to whether "mental health services are being provided to children in sufficient intensity and for a sufficient duration and in sufficient quantity to meet their needs." Dkt. 1073 at 2.

   4.  <u>Whether the Proposal Treats Class Members Fairly Relative to Each Other</u>

The 2020 Settlement Agreement treats class members equitably. The Advisory Panel does not object on this ground.

   5.  <u>Proposed Notice</u>

     a)  Legal Standards

Rule 23(e) requires that a court "direct notice in a reasonable manner to all class members who would be bound by" a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

     b)  Application

       (1)  <u>Proposed Notice Plan</u>

The parties propose providing a Long Form Notice, a Postcard Notice and a Text Message to all of the relevant persons. Dkts. 1036-11 ¶¶ 35-46, 1036-12 (Post Card Notice), 1036-13 (Long Form Notice), 1036-14 (Text Message). All three notices contain a settlement website address and a 1-800 number. *Id.* As counsel for the County Defendants ("Procel") declares

  The 1-800 number will instruct callers who want printed copies of the key documents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

> (e.g., the Long Form Notice, the Settlement Agreement, etc.) to leave a voicemail with their name and mailing address, and the Settlement Administrator will mail these documents to them. In addition, the 1-800 number will direct callers to reach out to Plaintiffs' counsel for any questions, and it will provide information about the case, settlement, submitting objections, and attending the Fairness Hearing.

Dkt. 1036-11 ¶ 37.

Procel also declares that the settlement website will display the Long Form Notice, links to the 2020 Settlement Agreement and "other relevant court documents" and the 1-800 number. *Id.* ¶ 38. He also declares that the settlement website will also direct viewers to contact Plaintiffs' counsel with questions regarding the settlement. *Id.*

The Postcard Notice is in English and Spanish. Dkt. 1036-12; Dkt. 1036-11 ¶ 39. Procel declares that the Long Form Notice will be posted in both English and Spanish on the Settlement Website. Dkt. 1036-11 ¶ 29.

Procel then declares that the settlement administrator will mail the Postcard Notice to each child over 10-years old with an open DCFS case as well as the parents and caretakers of such children (the "Recipients"). *Id.* ¶ 40. For those postcards returned as undeliverable, the settlement administrator will attempt to locate the recipient's current address and resend the postcard. *Id.* ¶ 41. Procel declares that the settlement administrator will send the Text Message Notice to each Recipient whose number the County knows. *Id.* ¶ 42. Procel declares that "[t]he plan is currently to send out over 36,500 text messages." *Id.*

Procel declares that the County Defendants will also post the Long Form Notice and Postcard Notice "in locations frequented by Recipients. For example, the County will place both notices in both English and Spanish in every one of DCFS' 21 regional offices." *Id.* ¶ 43. Procel declares that the County Defendants will also post the Long Form Notice, Postcard Notice, 1-800 number and link to the settlement website on the DCFS and DMH websites. *Id.* ¶ 44. Procel then declares:

> [G]iven that class members are "in foster care or at imminent risk of placement in foster care" and children in foster care must appear before the Dependency Court, the proposed Notice Plan calls for distributing both notices to those involved in Dependency Court hearings. Specifically, the County will send the notices to the Children Law Center, Los Angeles Dependency Lawyers, and Conflict Panel, with a request that their attorneys provide the notices to their clients: the children and parents in Dependency Court hearings.

*Id.* ¶ 45.

Procel declares that the County Defendants "will send the notices to every DCFS-contracted provider with the request that they provide notice to the children, caretakers, and parents they serve." *Id.* ¶ 46.

    (2)  <u>Objection by the Advisory Panel</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

The Advisory Panel argues the proposed notice is inadequate because "neither the postcard nor the long form notice informs class members that the County has *no obligations* under the Settlement after the Expiration Date." Dkt. 1040 at 29 (emphasis in original). Instead, the Long Form Notice simply states: "The Court will terminate jurisdiction over the County and the lawsuit will end on June 30, 2021 or the date the Court grants final approval of the Settlement Agreement, whichever is later (the 'Expiration Date')." Dkt. 1036-13 at 8. Neither the Postcard Notice nor the Text Message mention the Expiration Date.

The Advisory Panel states that the "class members and their caregivers are not sophisticated lawyers such that they may infer from this notice that the Settlement Agreement's benefits, if any, come to an abrupt end on the Expiration Date." Dkt. 1040 at 29. Accordingly, the Advisory Panel requests that, if preliminary approval of the settlement is granted, the parties should be required to "to revise the proposed notice to ensure that all Class members are adequately informed as to the actual services provided under the Settlement Agreement, its brief duration, and its adverse effects on their interests." *Id.*

In reply, the parties contend that certain obligations set forth in the 2020 Settlement Agreement are based on federal and state law, and for this reason it would be misleading to notify class members that the County Defendants had no obligations under the 2020 Settlement Agreement after the Expiration Date. Dkt. 1043 at 19; Dkt. 1044 at 19.

A key feature of the 2020 Settlement Agreement is that it limits the obligations of the County after the Expiration Date. The Long Form Notice as currently drafted does not adequately explain this term to a layperson. Thus, the Long Form Notice shall be revised to include the following bolded and underlined language:

> The Court will terminate jurisdiction over the County and the lawsuit will end on June 30, 2021 or the date the Court grants final approval of the Settlement Agreement, whichever is later (the "Expiration Date"). **After the Expiration Date, the County will not have any obligations under the Settlement Agreement except those that already exist under federal and state law.**

The Postcard Notice and Text Message need not mention the Expiration Date. They are short form notices that adequately balance providing notice of the settlement to class members with the constraints of a postcard and text message. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) ("As for the short form notice, it was designed to be, as the name suggests, short. . . . This notice was more than adequate.")

With the addition to the Long Form Notice discussed above, the proposed notice plan is adequate. It is accurate and sufficiently notifies class members of the terms of the settlement and how they may object to it.

**IV.    Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. The Rule 60(b)(5) Motion is deemed **MOOT** (Dkt. 975); provided, however, it may be renewed based on future developments in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV02-05662 JAK (FFMx) | Date | July 21, 2022 |
|---|---|---|---|
| Title | Katie A., et al. v. Diana Bonta, et al. | | |

The Final Approval Hearing on the Settlement Agreement is set for November 7, 2022. For all other deadlines, the parties shall refer to the concurrently filed Order Setting Deadlines Regarding Preliminary Approval of Class Settlement.

**IT IS SO ORDERED.**

                                               : 

Initials of Preparer    tj